**WALLER v. STANWOOD et al.**

**No. 4679.**

Court of Civil Appeals of Texas. El Paso.

Nov. 30, 1949.

Alvin P. Mueller, Seguin, for appellant.

Slater & Slater, Luling, for appellees.

McGILL, Justice.

This is an appeal from a judgment of the 25th Judicial District Court of Guadalupe County. In his original petition filed July 13, 1948, appellant as plaintiff sought a temporary injunction against appellees as defendants, prohibiting defendants from obstructing a lane or road running across their land, and prayed that on final hearing such lane be decreed to be an open, unobstructed outlet and right of way over and across defendants' land and for permanent injunction preventing defendants from in any way obstructing it. A temporary injunction was granted as prayed for, but on final hearing before the court without a jury it was dissolved and a permanent injunction denied. Hence this appeal. On June 20, 1949, appellees filed a motion to dismiss this appeal. This motion was passed for consideration with the merits of the appeal. The grounds of the motion are that when the temporary injunction was dissolved appellees proceeded with the construction of the fence obstructing the claimed right of way and have completed such fence and therefore the questions presented by this appeal have become moot. The ultimate relief which appellant sought in the trial court was the establishment of a permanent easement or right of way, and a permanent injunction to prevent its obstruction. He still seeks this relief here. The temporary injunction was merely incidental to this ultimate relief which he sought, therefore the questions presented have not become moot. There is no merit in the motion and we overrule it without further discussion.

Prior to 1931 Mrs. Ophelia Waller, the mother of appellant, owned from 575 to 600 acres of land out of the E. C. Pettus League in Guadalupe County, lying just across the San Marcos River northwest from the town of Fentress and between the river on the east or northeast and a public road from Kingsbury to Prairie Lea or Staples on the west or southwest. The land was somewhat in the form of a square. In 1931 Mrs. Waller divided the land among her five children, appellant Carl Waller, Barney Waller, Maurice Waller, Ethel Waller, and Frank Waller. The tracts given to the five children each extended from the Prairie Lea-Staples road to the San Marcos River.

There was introduced in evidence a rough sketch showing the division, according to appellant's testimony, which is not controverted. We here reproduce such sketch:

"5. To Maurice Waller a deed for 114 acres.

"All of said tracts being out of and a part of the E. C. Pettus League in Guada-

Plaintiff introduced in evidence the following instrument, dated August 26, 1931, signed and acknowledged by Mrs. Ophelia Waller and her five children:

"Whereas, Mrs. Ophelia A. Waller has this day made and executed several conveyances as follows:

"1. To Ethel Waller deed for 113.75 acres.

"2. To Frank Waller 101.25 acres.

"3. To Barney Waller deed for 110 acres.

"4. To Carl Waller a deed for 137.4 acres.

lupe County, Texas, all fully described in said respective deeds which are here referred to and made a part hereof; and

"Whereas all of said tracts of land lie between the Kingsbury-Prairie Lea Road and the San Marcos River, and they are all adjoining each other, and there is now located a private lane running across all of said tracts from north to south, which is used by all of said owners, but principally used by said parties in order to get to the road leading to the east along the south line of the Frank Waller land and the J. B. Manning land, towards Fentress; and

"Whereas it is the desire that this private lane shall be kept open for the use and benefit of all of said owners and for their agents and employes, members of their families and for those who may come to visit any of the owners of said lands:

"Therefore all of the above mentioned owners do here now establish said right of way for the private use of the parties designated in the next above paragraph, but do not designate same as a public lane in any way; same being strictly for the benefit of the private use of the above mentioned owners and those who may from time to time own said property in lieu of the present owners.

"Given under our signatures this August 26th 1931.

"Mrs. Ophelia Waller
"Ethel Waller
"Frank Waller
"Carl Waller
"Maurice Waller
"Barney Waller."

This instrument was recorded in the deed records of Guadalupe County on August 1, 1934. Appellees purchased the tract of land owned by Barney Waller in 1945. In his original petition plaintiff alleged: "Said tracts of land are more than a mile in length and most of the improvements are towards the east, or river end of the land, and likewise towards the eastern end there is a lane running in the general direction of north and south across the whole of said tract, and across the tracts of each of said five children, same being primarily for the convenience of the various occupants and owners and tenants living on all of said land from time to time, and which road leads in a generally southern direction, and after leaving said land turns to the east across the San Marcos River, and to the town of Fentress which is located immediately east of said river, and which is and has been the home of plaintiff for a number of years * * *."

In his first supplemental petition he alleged: "Whether by actual measurement said road is in the western or eastern portion of said lands is not known, but it is believed to be in the eastern half thereof with the possible exception of the extreme northern portion. Said road begins in the south line of the Frank Waller land at a public road and runs in a northerly direction through all of said tracts, but there is one turn for a short distance to the west after which it again runs northerly to the north line of the Waller land."

The court incorporated the following findings in the judgment:

"* * * the Court is of the opinion and finds that the road attempted to be established, or the easement intended by the parties to the agreement of 1931, and upon which plaintiff relies, did not at said time cross or intersect any portion of the land which defendants are now undertaking to fence and cultivate, but that said road or lane, as alleged in plaintiff's original petition, passed over or intersected the eastern portion of defendants' tract of land, as it did the other four tracts mentioned in Plaintiff's Petition and in said agreement, and ran north and south across same.

"The Court further finds that the defendants have not, and are not, attempting to obstruct by fence or otherwise said road mentioned in said agreement of 1931; and, further, that the acreage of defendants, which they are undertaking to fence, is about 31 acres off of the extreme west end of their tract of 117 acres."

The substance of appellant's points is that there is no evidence to support the above findings of fact, and hence the judgment rendered thereon is erroneous; and that the great preponderance of the evidence is contrary to and does not support such findings and judgment. Also that the court erred in not rendering judgment for appellant because the uncontradicted evidence showed that appellees had both actual and constructive notice of the right of way sued for prior to acquiring any interest in their land.

Appellant testified that the old Waller home was located on appellees' land shown by the letter "H" on the sketch, and that he lived in the town of Fentress (shown by the circle marked "F" on the sketch) when he took possession of his tract of land in 1932 or 1933; that he traveled the road

shown on the sketch to get to his land; that at the time the division was made and prior thereto this was the only road leading north and south across all of the tracts given by Mrs. Waller to her children over which you could have driven an automobile; that there were some trails through the land towards the river but there was no road leading through all the tracts; that after entering the Waller land on the south (the tract marked "Frank") this road runs north to within about 100 yards of the old homestead, then turns west for a short distance and then runs north across the land marked "Barney" on the sketch, now appellees' land; that this road many years ago after it left the old home also ran to the public road to the west; that this road had been there forty or fifty years with the exception that a slight change was made in the location of that portion thereof running west from the old home after the division in 1931, so that this portion of the road thereafter fell on the division line between appellant's land and Barney Waller's land; that his land had been put in cultivation about forty years ago and that they always went over this road across Barney's land to get to it; that this is the road traveled since the division and prior thereto to get to the Kingsbury, Prairie Lea-Staples road by road across his (appellant's) land; that the road shown on the sketch is being used by all the people living on any part of the whole Waller tract and they have used it since 1931; that this road was plainly visible in 1945 when appellees bought Barney Waller's land. Appellant's testimony was substantially corroborated by his brother Maurice Waller and his sister Ethel Waller. His nephew Donald Waller, and Herbert Fleming and Walter Mundt, two witnesses who were not related to him so far as the record shows, corroborated his testimony as to the location of the road at the time of the division of the property in 1931 and its use since then. Donald Waller and Herbert Fleming also testified that there was no other road running across all the tracts in 1931.

Appellee F. L. Stanwood was the only witness for the defense. He testified that at the time he bought the Barney Waller tract there was a traveled road running across it. He continued: "Since I bought the land I have had occasion to cross the east end of this land, near the river; I have gathered pecans in the river bottom and traveled the road there. There is evidence on the ground of an old lane or roadway running from the south line of the lands through all these tracts to the north line. I have traveled it up to Carl's fence line. It was fenced and a wire gap at that place on the north side when I purchased the farm, the old gate had rotted down; that is in this line above the homestead. This *roaway* that I am speaking about has a gap down there on the south line and runs across up to Carl's south line. I found this evidence of an old lane there after I bought this land, towards the river, and I never objected to anybody using it. The only time it was ever closed Maurice told me was of Barney's objection to him closing this tract he used for Sudan grass. So when I purchased the farm I told him it was perfectly all right with me if he closed that off. So he closed it on that end, the south end, so that made this old road closed on both the north and south ends."

On cross examination:

"At the time I bought the land, as I said while ago, I could see evidence of an old road up there close to the river. I could see evidence of it down the hill leading in a northern direction to Carl's south fence. I later drove a Chevrolet sedan down into this bottom to gather pecans. My brother in law had a Pontiac, and he drove his car down there too, all the way to the river.

"Q. From where? A. From the farm house. My farm house on my land. The only part that I traveled was from the old home, that is the home on my land to the river, to the bottom. That was the first year, and that is the only time I have been able to go down there in a car. The second year we had a flood and that made it impossible for any kind of car or wagon to get across. It washed out about five— three feet deep and eight or nine feet wide, a gully or canyon that runs from this spring up there to the river. It is impassable now."

If the court's finding above quoted is susceptible of a construction which would locate the road contemplated by the agreement of 1931 as the road shown on the sketch from the point where it enters the Frank Waller tract to where it approaches the old Waller homestead and turns west, and an extension thereof directly north across appellees' land to appellant's land clearly there is no evidence to support such finding. Stanwood did not testify to the existence of such an extension. His testimony was of evidence of an old road farther east. We do not so construe the court's finding. However, Stanwood's testimony does not in any way contradict the testimony of appellant and his witnesses. We think the only fair inference from his testimony is that the traveled road across the tract of land which he bought from Barney Waller, and which he admitted was there at the time of his purchase, is the road in controversy. He does not testify that the old lane or roadway running from the south line to the north line through all the tracts, evidence of which he found after his purchase in 1945, was in existence, much less in use in 1931. Such evidence is insufficient to create more than a mere surmise or suspicion that such were the facts. The instrument executed by the Wallers in 1931 clearly comprehended an easement or roadway running generally in a north and south direction across all the tracts which were deeded to the five children— a road which was then used by all the parties to the instrument. From appellant's testimony and testimony of his witnesses the road shown on the sketch is the only road which fits this general description and which was in use by the parties to the instrument at the time it was executed in 1931. The fact that in 1945 there was evidence of an old road which fits the general direction of the lane or road described in the instrument without any showing that this road existed or was in use by any of the parties to the instrument in 1931, at most raises a mere surmise or suspicion that such road may have been the road comprehended in the instrument. Such fact is not sufficiently tangible to form the basis of a judgment. The location of the easement or right of way granted by the instrument was not fixed therein. Under such circumstances the location of such easement or right of way will be held to be fixed as the only road or right of way which was located on the land which fits the general description in the instrument and which was used as a road or right of way at the time the instrument was executed. 19 C.J. p. 972, 28 C.J.S., Easements, § 82; Elias v. Horak, Tex.Civ. App., 292 S.W. 288, Wr.Ref. We therefore hold that the court erred in failing to render judgment establishing the road or right of way across appellees' land as shown in the sketch, and in failing to grant appellant a permanent injunction as prayed for.

It is therefore ordered that the judgment be reversed and judgment here rendered accordingly.

Reversed and rendered.